New *v.* Driver.    New *v.* Mason.

1. The fair import of the evidence of a witness who once owned a promissory note which has since been paid off being that in his opinion it was one of several notes produced at the trial, all the signatures to the same being torn off, his testimony that the note which he held was signed by the husband of the claimant, and not by the claimant herself, was not inadmissible because said note was not proved to be lost or destroyed, nor its absence accounted for. According to the witness's opinion, it was not absent but was present, the claimant having produced it as one of the group of notes which she had testified were signed by herself.

2. Unsigned notes and receipts upon a *fi. fa.* are not of themselves evidence.

3. Conversations between a vendor and a married woman, at and shortly before the time he made a formal contract with her for the sale of the premises in dispute, under which contract he exe-

cuted to her a bond for titles and took her notes for the purchase money, are admissible in evidence in her favor in resistance to the creditors of the husband, if what was said would tend to show that she was not only the nominal but the real purchaser, and that certain payments subsequently made through her husband were made with her means, in pursuance of an understanding and arrangement which existed from the inception of the purchase. More especially is this true where the creditors contend that the notes of the husband and not those of the wife were given for the unpaid purchase money, and where the signatures to the notes have been torn off previous to the trial, and the wife testifies that the signatures were her own and not those of her husband.

4. There being no evidence that the debtor (the claimant's husband) was insolvent or owed any debts at the time of the transaction alleged to have been fraudulent, it was error to instruct the jury on the law of voluntary conveyances by an insolvent debtor.

5. Where neither by the entry of levy nor the admission of the claimant, the possession of the property levied upon is shown to be in the defendant in *fi. fa.*, and the plaintiff, taking the burden of proof, establishes the fact by evidence introduced before the jury on the trial, he and not the claimant is entitled to the conclusion, unless the claimant introduces no evidence.

June 15, 1892. By two Justices.          *Judgment reversed.*

Evidence. Husband and wife. Debtor and creditor. Charge of court. Opening and conclusion. Before Judge JANES. Haralson superior court. July term, 1891.

Executions in favor of Driver and Mason against J. H. Weaver and L. H. New were levied on a house and lot to which Mrs. L. H. New interposed her claim. The property was found subject; the claimant's motions for new trial were overruled, and she excepted. One report suffices for both cases.

The Driver execution was issued from a justice's court on a judgment dated October 13, 1887, for $87.18 principal, $8.70 attorney's fees, interest from date of judgment, and $2.80 costs. There was an entry by the constable of due search made and no personal property found, dated October 22, 1887; also, an entry of levy on the property now claimed, dated October 22, 1887, and

signed by the constable; also, an unsigned entry dated December 6, 1887, stating that the justice's, constable's and sheriff's costs, and $97.35 principal, interest and attorneys' fees, are hereby applied in full satisfaction of this execution, said sums being part of proceeds of sale of property of L. H. New, sold first Tuesday in December, 1887, under *fi. fa.* of C. Munroe *vs.* Weaver & New; also, two unsigned receipts to the sheriff, dated December 8, 1887, in full of principal, interest, attorneys' fees and costs. J. R. Driver testified that L. H. New was in possession of the property levied on at the date of the levy, and had been for some time before. The claimant introduced a bond for title to this property to herself from C. A. Jones, dated October 7, 1884, for $647.85, $78.85 acknowledged as paid, the balance to be paid, $189.65 three months after date, $94.82½ six months after date, $94.85 nine months after date, and $94.85 fifteen months after date. She also introduced six promissory notes given for the purchase money of the house and lot described in the foregoing bond for titles, dated October 7, 1884, payable to Mrs. Ophelia H. Jones or bearer, the first being for $94.82½, due three months after date; the second being an exact copy of the first ; the third being the same, except that it was due six months after date and drew interest; the fourth being the same, except it was due at nine months; the fifth being the same, except that it was for $94.85, was due at twelve months, and drew interest; and the sixth being the same, except that it was for $94.85, was due at fifteen months, and drew interest. The signature had been torn from all the notes, and the brief of evidence states that the claimant's signature to her claim affidavit was longer than the space on the notes where the signature had been torn off. She also introduced a deed to herself from C. A. Jones dated January 20, 1891, recorded July 21, 1891, and conveying the property in

dispute to her in consideration of $647.85. She testified: I gave the notes to the vendor, Mrs. Jones, for the house and lot. I signed them. I tore off the signatures; I destroyed or threw them down; I tore them off to destroy the effect of the notes. They were fully paid off before the signatures were torn off. They and the bond were signed at the same time. I purchased the property. I made the trade with Mr. C. A. Jones and his wife. I went into possession as a purchaser from them. Myself and family, consisting of four children and husband, reside in the house; I have lived in it six years. My husband has never had any title or interest in it. I paid for it with my money received from my father; allowed my husband who was running a business in Tallapoosa to use, or loaned him my money to use in his business, before I purchased the property from Mrs. Jones, and when I made the trade he paid Mr. Jones the notes in goods and money, for which I gave him credit. He paid it to and on my order on his debt to me. I do not owe C. A. Jones anything now. It has been four or five years since he was fully paid up and all the notes taken up. I purchased the house and lot, made trade myself, had bond made to me, gave notes and paid them as above recited, paid with money received from my father; and the title is certainly in me, as my husband paid as above recited at my direction on his debt to me. My father gave me $800. I loaned it to my husband to use in his business, and when I purchased this property he paid the notes at my order to Mr. and Mrs. Jones on his debt to me, for which I gave him credit. I had no income and was engaged in no business. I paid some of the money myself to Mrs. Jones on the notes, and also sent her a good many goods that she ordered through me; the balance was paid, as above answered, through my husband. New did not purchase the house and lot nor did he give his notes for the same. A portion of

the debt as above set forth, was paid out of the grocery which New was running, upon my order and through me by my husband as a payment to me. I never had a conversation with M. M. Mason about the matter at all July 24, 1890.

C. A. Jones testified: I know the claimant bought the house and lot, because I sold it to her. The notes were made payable to my wife because I gave her the money that was to be realized from the sale of the property. She died September 18, 1885. All of the purchase money for the property has been paid. L. H. New paid a part of it, and claimant paid a part. About $10 was paid in cash at the time the trade was made. L. H. New was then selling whiskey. He was not in business with any one, so far as I know. I do not remember what part of the purchase price of the property was paid in money, but most of it was so paid; some of the payments were made to me, but I do not remember the times, except the last payment of $52, which was in December, 1889, and the first payment of $10. Only a small amount was paid to me through W. L. Tumlin, and I do not remember what that was. It is not true that several hundred dollars of the price was paid in merchandise or goods from L. H. New's store. New was in business with Darnell at the time all of the goods taken on the debt were purchased from the store. Three payments were made direct to me; the first payment of $10, the payment through W. L. Tumlin and the last payment of $52. I do not remember what amount had been paid up to September 18, 1885, but all had been paid except about $100. I received the last payment on the purchase price of the house and lot about the last of December, 1885. G. R. Hutchins testified that late in 1884, or early in 1885, L. H. New was in business by himself; that he bought out M. C. Kay and ran the business alone; that he and Kay were together awhile; that he

did not continue by himself very long, but went into business with Darnell, and at that time had a nice set of bar fixtures, stock of whiskeys, etc., worth $300 or $400.

The plaintiff introduced W. L. Tumlin, who testified that late in 1885, or early in 1886, C. A. Jones brought to him a note signed by L. H. New, and wanted to trade it to him; it was for the purchase money of the property in dispute, and amounted to $98 or $100 principal and interest; paid Jones some money and settled an account against him in the transaction; the notes in evidence looked like the note Jones traded him. M. M. Mason testified: Just after July term, 1889, of Haralson superior court, claimant said at his house that the way she claimed the house and lot was, that defendant worked her father's land four years and did not make anything and she charged him $400 on that account, and then she charged him $400 while living on the Air Line railroad when he lost what he made then. Heard her say the same thing in substance three or four times. Her father had a good deal of property consisting of stock, lands, mules and occasionally some money; was a good liver; had some eight children living and more dead who left heirs. Never heard claimant say anything about the property levied on being hers until it was levied on, though he lived close to her for some time. Darnell testified: In 1885, went into business with defendant New, who did not have more than $100 worth of stock, nor did he put in any other stock, except $10 or $15 worth of goods while they were in business together. C. A. Jones traded a good deal with them. Jones and New had a settlement of Jones' account, and some notes. New paid some money and settled Jones' account, and it all amounted to about $350. This was credited to Jones and charged to defendant on their books. Bevis (the witness to the bond for title) was clerking for them at that time and kept their books. Late in 1885 or early in 1886, their business was

burned out. Claimant had no interest in the store. A. J. Head testified that L. H. New was in business by himself but a short while in the winter of 1884 or early in 1885, having bought out Kay, and in a short while he and Darnell went in together, defendant then having not more than $100 worth of stock and bar fixtures. The tax books were introduced to show that the claimant returned no property in 1884 or 1885.

The special grounds for new trial are as follows:

1. The court overruled the claimant's objections to the testimony of Tumlin, that C. A. Jones brought to him a note signed by L. H. New and wanted to trade it to him, it being for the purchase money of the house and lot levied on, and amounting to $98 or $100. The ground of objection was, that there was higher and better evidence of the contents of the note, it not being shown that the note testified about was lost or destroyed.

2. The court overruled the objection of the claimant to the execution, the ground of objection being that it was fully paid off and settled, as evidenced by receipt thereon reciting that fact.

3. The court ruled out the following testimony of C. A. Jones: "At the time the sale was made and agreed on, it was said and understood that Mrs. L. H. New's money was to pay for the property. Pending the negotiations and before the trade was made, Mrs. New said that she was expecting to get some money from her father, and if she got the money she would buy the property, and if she did not get the money from her father she would not buy the property." Also, "The arrangement was this: Mr. L. H. New was selling goods at that time, and my wife told Mrs. New that what goods she wanted she would get from L. H. New's store, and that the amount she got in that way could go as a credit on the notes, it being understood by and between my wife, myself, L. H. New and Mrs. L. H. New, that said L. H.

New was to use his wife's money in his business until Mrs. New's notes became due, said L. H. New having stated to us that he was using his wife's money.   L. H. New told me he was using his wife's money in his business, but I do not remember the exact date.   I do not know that he ever told me this but the one time."

4. The court charged: " If the property was bought and paid for by the defendant in *fi. fa.*, or was bought by any other person and paid for by the money or property of defendant and the title was made to the wife, then you would be authorized to find the property subject, provided you should find either that it was to delay or defraud the creditors of L. H. New, or if it was a voluntary conveyance made by New at a time when he was insolvent.   If New owed debts and was insolvent at the time of this transaction, he would have no right to defeat his creditors by conveying property to his wife, or by paying for property and having it conveyed to his wife."

5. The court ruled that the plaintiff was entitled to the opening and conclusion, over claimant's objection.

W. F. Brown, for claimant.

No appearance *contra*.